In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-4239

BEATRICE MOTUNRAYO OYEKUNLE,

*Petitioner*,

*v.*

ALBERTO R. GONZALES, Attorney General
    of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A 96-421-228

ARGUED JULY 11, 2007—DECIDED AUGUST 22, 2007

Before POSNER, COFFEY, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The petitioner sought asylum on the ground that if she is returned to her native Nigeria she may be forced to undergo female circumcision. If her fear is well founded she is entitled to asylum, but the Board of Immigration Appeals ruled that it is not well founded.

She testified (and—critically—the Board did not question the accuracy of her testimony, holding only that it did not demonstrate an objective, as distinct from her subjective,

fear of persecution) that after her second child (and first son) was born, her husband's family pressured her to be circumcised because it is traditional in his tribe for a woman to be circumcised upon the birth of her first son. The petitioner was afraid that the procedure would kill her, because she had experienced excessive bleeding during childbirth and her older sister had died after being circumcised. She was able to resist the pressure from her husband's family for ten years because he refused to yield to its pressure, but he changed his mind when his father told him he would not inherit the family farm unless she was circumcised. So she fled Nigeria. She could if returned to Nigeria avoid circumcision by divorcing her husband, but she does not want to do that as she still loves him and does not want her children (who remain in Nigeria with their father) to be raised in a broken home. There is an element of paradox in this since as long as she is in the United States and her husband and the children are in Nigeria the children's home is in a sense broken; but the Board did not remark the point. She and her husband speak frequently by telephone and he has apologized to her for seeking to have her circumcised.

The Board first noted that a State Department country report says that the Nigerian state in which the petitioner's father-in-law lives (Edo) (the petitioner came from Lagos, which is where her husband lives) has outlawed female circumcision—but it adds that Nigerians continue the practice. The Board remarked that the country report does not support the petitioner's claim of a well-founded fear of persecution, but what the Board should have said was that the report has little if any bearing on the case. *Dong v. Gonzales*, 421 F.3d 573 (7th Cir. 2005) ("an IJ should not rely on generalized Profiles or Country Reports to refute an

applicant's personal experience"); *Chen v. INS*, 359 F.3d 121, 130 (2d Cir. 2004); cf. *Agbor v. Gonzales*, 487 F.3d 499, 503-04 (7th Cir. 2007); *Kllokoqi v. Gonzales*, 439 F.3d 336, 342-43 (7th Cir. 2005); compare *Xiao Xing Ni v. Gonzales*, No. 04-0042-AG, 2007 WL 2012395, at *2 (2d Cir. July 12, 2007). The Board did not reject the petitioner's testimony that her father-in-law and her husband's other relatives want her circumcised, and there is no indication of any actual threat of punishment that might serve to deter the practice or that her father-in-law wants her to be circumcised in Edo rather than in a part of Nigeria in which the practice has not been criminalized.

The Board quoted from a letter from a lawyer in Nigeria advising the petitioner to stay "whenever [*sic*—he must have meant 'wherever'] she is for sometime[ ], at least for the whole thing to cool down before coming [back] to Nigeria." Noting that the letter had been written almost three years earlier, the Board speculated that after so long a period maybe things have cooled down. Maybe yes, maybe no; there is no evidence that the former is more probable. The Board added that "the husband's repentance is also significant, in that the [petitioner] testified that he was the person who protected her from being circumcised by his relatives throughout their marriage." But while he has apologized to the petitioner, there is no indication that he has resumed protecting her. He may want the farm badly enough to allow her to be subjected to the procedure.

The Board did not suggest that asylum can be denied on the ground that the petitioner could avoid being persecuted by divorcing her husband, or by relocating to another part of Nigeria, beyond the reach of his family, which would probably amount to the same thing—that is, entail her divorcing him. We cannot find any published opinion

addressing the question whether the option of divorce is a ground for concluding that an asylum seeker does not have a well-founded fear of persecution if she is returned to her native country. The possibility of concealing one's religious beliefs does not disentitle a person to asylum on the basis of fear of religious persecution, *Muhur v. Ashcroft*, 355 F.3d 958, 960-61 (7th Cir. 2004); see also *Iao v. Gonzales*, 400 F.3d 530, 532 (7th Cir. 2005); *Zhang v. Ashcroft*, 388 F.3d 713, 719-20 (9th Cir. 2004) (per curiam), and that proposition is at least suggestive of limitations on the self-help remedies that can reasonably be required of the asylum seeker. *Giday v. Gonzales*, 434 F.3d 543, 555 (7th Cir. 2006), holds that bribery is not among them. Whether dissolving a marriage is among them is an issue for the Board to resolve in the first instance, and neither in this nor in any other case that we have found has the Board discussed it.

All the Board relied on in this case in ruling that the petitioner's fear of persecution should she be returned to Nigeria lacked an "objective basis" was the country report, the lawyer's letter, and the husband's apology. None of these things is inconsistent with her fear being well founded. *Liu v. Ashcroft*, 380 F.3d 307, 312-13 (7th Cir. 2004); *Ahmed v. Ashcroft*, 348 F.3d 611, 618 (7th Cir. 2003). If the reference to "objective basis" means that the Board thinks an asylum seeker's testimony is insufficient to create a well-founded fear of persecution, it is mistaken. 8 C.F.R. § 1208.13(a); *Capric v. Ashcroft*, 355 F.3d 1075, 1085-86 (7th Cir. 2005). Requiring that an "objective basis" be shown for a "well-founded fear" is redundant; a well-founded, as distinct from a groundless, fear has by definition an objective basis. The Board should resist the urge to multiply entities.

There is a circuit split, however, on which this court has not taken sides, *id*. at 1086 n. 4; *Gontcharova v. Ashcroft*, 384 F.3d 873, 876-77 (7th Cir. 2004), on the related question of the validity of the Board's "corroboration rule." *In re S-M-J-*, 21 I. & N. Dec. 722, 725, 1997 WL 80984 (BIA 1997). That rule empowers the immigration judge to require that credible testimony of the asylum seeker be corroborated in circumstances in which one would expect corroborating evidence to be available and presented in the immigration hearing. Compare *Dorosh v. Ashcroft*, 398 F.3d 379, 382-83 (6th Cir. 2004); *Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003), and *Liao v. Department of Justice*, 293 F.3d 61, 71 (2d Cir. 2002), all of which apply the rule, though only *Dorosh* actually considers its validity, mistakenly stating that *Kayembe* and *Liao* had "expressly approv[ed]" it, 398 F.3d at 382, with *Ladha v. INS*, 215 F.3d 889, 898-901 (9th Cir. 2000), holding the rule invalid. The Ninth Circuit noted the oddity of requiring corroboration of testimony that the immigration judge has *already* decided to credit. *Id*. at 900 n. 11. We have also expressed skepticism about the rule. *Dawoud v. Gonzales*, 424 F.3d 608, 612-14 (7th Cir. 2005).

For aliens who applied for asylum after May 11, 2005 (see Pub. L. No. 109-13, § 101(h)(2)), the rule has been superseded by a statute (part of the Real ID Act) that, however, in effect codifies the rule by providing that "where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." U.S.C. § 1158(b)(1)(B)(ii); see *Dawoud v. Gonzales, supra*, 424 F.3d at 613. The petitioner applied for asylum earlier than that, so the statute doesn't apply to her. But

neither for that matter is the Board's corroboration rule of unsettled validity applicable. The petitioner's testimony was corroborated by an affidavit from her doctor in Nigeria attesting to her excessive bleeding following childbirth, an affidavit from her pastor in Nigeria verifying that her husband's family sought to have her circumcised, and a letter from her father's pastor supporting her statement that her sister had died following circumcision and stating that church leaders have been unable to dissuade the family of the petitioner's husband from seeking to have her circumcised.

The Board's decision fails to build a bridge between the evidence and the conclusion that the petitioner lacks a well-founded fear of persecution if she is returned to Nigeria. All the evidence to which the Board referred either supports or is consistent with her having such a fear. The petition for review is therefore granted, the Board's order vacated, and the matter returned to the Board for further proceedings consistent with this opinion.

A true Copy:

     Teste:

 

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*