**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NIRMAL SINGH,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney General,

*Respondent.*

No. 08-70434

Agency No.
A099-330-446

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 15, 2010—Pasadena, California

Filed June 17, 2011

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain, Susan P. Graber,
M. Margaret McKeown, Raymond C. Fisher,
Ronald M. Gould, Richard A. Paez, Johnnie B. Rawlinson,
Richard R. Clifton, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge O'Scannlain

8223

## COUNSEL

Hilary Han, Dobrin & Han, PC, Seattle, Washington, argued the cause for the petitioner and filed a brief; Bart Klein, Law Offices of Bart Klein, Seattle, Washington, was on the brief. Taranjeet Kaur Buttar, Buttar & Cantor, LLP, Tukwila, Washington, also filed a brief; Patrick Cantor, Buttar & Cantor, LLP, Tukwila, Washington, was on the brief.

John W. Blakeley, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, Washington, District of Columbia, argued the case for the respondent and filed a brief; Donald E. Keener, Deputy Director, Office of Immigration Litigation, U.S. Department of Justice, Washington, District of Columbia; and Tony West, Assistant Attorney General, Civil Division, U.S. Department of Justice, were on the brief. Rebecca Ariel Hoffberg, U.S. Department of Justice, Washington, District of Columbia, also filed a brief; Gregory Katsas, Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, District of Columbia; William C. Peachey, Assistant Director, Office of Immigration Litigation, U.S. Department of Justice, Washington, District of Columbia; and Mona Maria Yousif, Civil Division, U.S. Department of Justice, Washington, District of Columbia, were on the brief.

Charles Roth, National Immigrant Justice Center, Chicago, Illinois, filed a brief on behalf of the National Immigrant Justice Center as amicus curiae in support of the petitioner.

---

## OPINION

McKEOWN, Circuit Judge:

Applicants for asylum must show by clear and convincing evidence that they filed their applications within one year after arrival in the United States, absent changed or extraordinary circumstances. *See* 8 U.S.C. § 1158(a)(2)(B).[1] The heart of petitioner Nirmal Singh's argument on appeal is that his credible testimony does not *require* corroboration to establish "by clear and convincing evidence" that his asylum application was timely. *See id.* Nonetheless, the Board of Immigration Appeals ("BIA") decided that Singh could be required to "provide evidence that corroborates otherwise credible testimony," citing 8 U.S.C. § 1158(b)(1)(B)(ii), a completely different statutory provision that governs proof of an applicant's status as a *refugee*.[2] We agreed to rehear this case en banc to clarify whether the BIA erred in imposing the corroboration provision found in § 1158(b)(1)(B)(ii) on Singh's showing of timely filing under § 1158(a)(2)(B).[3] Basic principles of statutory construction lead us to conclude that the BIA improperly imported the corroboration requirement of § 1158(b)(1)(B)(ii)

---

[1]Unless otherwise noted, all statutory references are to the Immigration and Nationality Act of 1952, as amended ("INA"), and codified in Title 8 of the United States Code.

[2]For ease of reference, we use the term "refugee status" to refer to an individual who is a refugee under § 1101(a)(42)(A) and not to refer to an individual admitted as a refugee under § 1157.

[3]A three-judge panel denied Singh's petition, holding that the BIA did not err in requiring corroboration of Singh's testimony as to his date of entry into the United States. *Singh v. Holder*, 602 F.3d 982 (9th Cir.), *vacated and reh'g en banc granted*, 623 F.3d 633 (9th Cir. 2010).

(governing demonstration of *refugee status*) into § 1158(a)(2)(B) (requiring applications to be timely filed).[4]

Section 1158(b)(1)(B)(ii) applies to the merits of an asylum claim, not to the one-year filing deadline for asylum applications. The one-year provision is governed by § 1158(a)(2)(B), which is silent on the issue of corroboration. It may seem harmless to gloss over the language of the statute, but doing so would do a disservice to our charge to interpret the statute as written.

Further, the corroboration requirement is not without consequence. This burden is not illusory, as the one-year bar determination is not reviewable absent a legal or constitutional question. *See* 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D). In keeping with the Supreme Court's mandate to look to "the language of the statute itself," *Ransom v. FIA Card Servs., N.A.*, ___ U.S. ___, 131 S. Ct. 716, 723 (2011), we grant the petition and remand the matter to the BIA.[5]

---

[4]The BIA's decision in this case was a non-precedential decision and should be granted deference only in proportion to its thoroughness and the "validity of its reasoning." *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir.) (en banc), *cert. denied*, 130 S. Ct. 1011 (2009). Here, the decision was cursory and without analysis and thus entitled to no deference. We have no occasion to decide whether the BIA could have adopted a reading different from our own in a published decision entitled to some deference.

[5]It bears noting that the immigration judge ("IJ"), unlike the BIA, did not impose the corroboration provision of § 1158(b) but instead correctly cited § 1158(a) and found that Singh did not meet his burden because the proffered testimony was not clear and convincing. It is true that credible testimony that does not establish the necessary facts may not meet the clear and convincing standard. Because the BIA did not incorporate the IJ's decision but instead pointedly applied § 1158(b), remand is in order. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case.").

## I. BACKGROUND

Nirmal Singh is an Indian citizen and former resident of that nation's Punjab state. Singh maintains that as a result of his political activities and affiliation, he was arrested and tortured on four occasions. According to Singh, after his fourth confrontation with authorities, a police officer told him: "If you want to save your life, leave India." Singh claims that he took the officer's advice and shortly after fled to Canada. Singh asserts that he arrived in Canada, using a false passport, on October 10, 2004. He says he stayed there for approximately ten days before entering the United States without inspection on or about October 20, 2004. In the fall of 2005, Singh filed for asylum.[6]

At his hearing before the IJ, Singh conceded his removability and sought asylum. The IJ rejected Singh's request for asylum as untimely filed. Although the IJ made no adverse credibility finding, he found Singh's testimony insufficient to establish his last date of entry into the United States "by clear and convincing evidence." In so ruling, the IJ noted that Singh had provided no documentation corroborating his claim that he entered this country on October 20, 2004. Without an established date of entry, Singh could not prove that he filed his application "within 1 year after the date of [his] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B).

Singh appealed to the BIA, which invoked the corroboration provision of § 1158(b)(1)(B)(ii) and concluded that Singh's application was time-barred because he failed to provide corroboration of his date of entry. According to the BIA, "[a]lthough the respondent has claimed on appeal that his

---

[6]Although the date on which Singh filed his asylum application is contested, the BIA did not address this issue in its decision. In reviewing this petition, "we consider only the grounds relied upon" by the BIA, *see Andia*, 359 F.3d at 1184, and we therefore do not reach the question of the precise filing date.

credible testimony should have been sufficient to meet his burden of proving his date of entry, the statute specifically provides that, in determining whether an asylum applicant has met his burden of proof, the trier of fact may require an applicant to 'provide evidence that corroborates otherwise credible testimony.' " (quoting § 1158(b)(1)(B)(ii)). Singh timely petitioned this court for review.

## II.  JURISDICTION TO REVIEW THE LEGAL QUESTION PRESENTED.

We first consider whether we have jurisdiction to review the BIA's timeliness determination. Subject to certain exceptions, an individual's application for asylum will be considered only if the applicant "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Section 1158(a)(3) states that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)]." Read together, these provisions appear to deprive this court of jurisdiction over determinations that an individual failed to file his application within one year of entering this country. *See Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir. 2001).

Despite this jurisdictional limitation, "the Real ID Act of 2005 restores our jurisdiction over 'constitutional claims or questions of law.' " *Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007) (per curiam) (quoting *Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir. 2005)); *see also* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in . . . any other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."). Singh claims that, because his testimony was deemed credible, the agency committed a legal error by requiring corroboration. Because this is a legal argument about how to

construe 8 U.S.C. § 1158(b)(1)(B)(ii), and not a factual argument about whether the evidence proved Singh's date of entry, we have jurisdiction to review Singh's challenge.

### III. THE ONE-YEAR FILING DEADLINE UNDER § 1158(b)(1)(B)(ii) DOES NOT INCLUDE A STATUTORY CORROBORATION REQUIREMENT.

We now turn to whether an immigration judge may require an asylum applicant to corroborate credible testimony that he complied with the one-year filing deadline. The BIA has not addressed this issue in a precedential decision. We therefore analyze the statute de novo, and begin with the statutory text.

Section 1158, entitled "Asylum," is divided into two subsections: (a) addresses the "Authority to apply for asylum," and (b) governs the "Conditions for granting asylum." The first provision, subsection (a), regulates whether an applicant can even get out of the starting gate to apply for asylum. An applicant who does not pass the threshold tests under (a) never gets to (b).

[1] The one-year filing deadline for asylum applications is found in § 1158(a)(2)(B), which precludes applicants from applying for asylum unless they demonstrate by clear and convincing evidence[7] that they filed "within 1 year after the date of [their] arrival in the United States." Subsection (a) also includes other requirements, such as physical presence or arrival in the United States, *id.* § 1158(a)(1), and the absence of disqualifying factors such as a safe third country to which the individual may be removed, *id.* § 1158(a)(2)(A), or a previously denied asylum application, *id.* § 1158(a)(2)(C). None of the threshold requirements found in § 1158(a) references corroboration or documentary evidence.

---

[7]Throughout the INA, the clear and convincing standard has been defined as "between a preponderance of the evidence and proof beyond a reasonable doubt." *Kenyeres v. Ashcroft*, 538 U.S. 1301, 1305 (2003) (internal quotation marks omitted).

**[2]** Congress imposed the one-year filing deadline for asylum applicants as part of the Illegal Immigration Reform and Illegal Immigrant Responsibility Act of 1996. Pub. L. No. 104-208, § 604(a), 110 Stat. 3009-691. Congress later made additional revisions to asylum law through the REAL ID Act of 2005, but the Act did not amend § 1158(a)(2)(B)—the petitioner's burden to demonstrate compliance with the one-year deadline—or add a corroboration provision of general applicability throughout the INA. *See* Pub. L. No. 109-13, § 101, 119 Stat. 231, 302-06 (2005). Because Congress declined to provide a corroboration provision applicable to the timely filing requirement in § 1158(a), the question before us is whether Congress addressed corroboration of timely filing in another statutory provision. The answer is "no."

**[3]** Until the passage of the REAL ID Act, it was the law of this circuit that corroboration of an asylum applicant's credible testimony with respect to refugee status could not be required. *See Aden v. Holder*, 589 F.3d 1040, 1043-44 (9th Cir. 2009) (citing *Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000); *Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir. 2000)). With the REAL ID Act, Congress abrogated our case law by adding to the INA three new, independent corroboration provisions: one for asylum, one for withholding of removal, and one for all *other* forms of relief.[8] The corroboration provisions are virtually identical and none applies to the one-year filing deadline.[9]

---

[8]Section 101 of the REAL ID Act, which included all of the new corroboration requirements, is attached as an appendix.

[9]The dissent would read the REAL ID Act's three provisions as a single overarching corroboration requirement for the INA. In support of its interpretation of the statute, the dissent cites the REAL ID Act's "bias toward corroboration" referenced in *Aden*, 589 F.3d at 1045. Dissenting op. at 8248-49. However, *Aden* dealt only with the burden of demonstrating *refugee status* under § 1158(b)(1)(B)(ii), despite the general dicta included in the opinion and cited by the dissent. *See* 589 F.3d at 1043-44. And, more to the point, the corroboration language appears affirmatively in individual sections, not as an umbrella requirement.

**[4]** The first provision is titled "CONDITIONS FOR GRANTING ASYLUM" and added § 1158(b)(1)(B)(ii). REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a), 119 Stat. 231, 302-03. The BIA and the dissent rely upon this provision, which allows adjudicators to request corroboration of an applicant's testimony establishing refugee status where such corroboration is reasonably available, to conclude that Singh failed to demonstrate compliance with the one-year deadline due to the lack of corroborating evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(ii).

**[5]** Nothing in the text of the statute allows the corroboration provision of § 1158(b)(1)(B)(ii) to be imported magically into § 1158(a), the provision establishing the one-year filing deadline. Rather, the language of § 1158(b)(1)(B)(ii) and its immediate statutory context mandate the opposite conclusion. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *see also Ransom*, 131 S. Ct. at 723-24 (interpreting the statute based on the plain language and the statutory context and purpose).

Subsection 1158(b) governs the "Conditions for granting asylum," and covers the grant of asylum, not the authority simply to start the asylum process through an application. Within § 1158(b), the first subparagraph, § 1158(b)(1)(A), provides the agency the discretionary authority to grant asylum to an individual who has applied "in accordance with the [established] requirements and procedures" and who "is a *refugee* within the meaning of" § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(A) (emphasis added). The next subparagraph, § 1158(b)(1)(B), is titled "Burden of proof" and provides that "[t]he burden of proof is on the applicant to establish that the applicant is a *refugee*." *Id.* § 1158(b)(1)(B)(i) (emphasis added). This clause refers exclusively to demonstrating that the applicant is a *refugee* under the statute.

**[6]** The corroboration provision invoked by the BIA, § 1158(b)(1)(B)(ii), follows in the next clause and is also linked to an applicant's *refugee status*. Under the heading "Sustaining burden," § 1158(b)(1)(B)(ii) provides, in its entirety:

> The testimony of the [asylum] applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient *to demonstrate that the applicant is a refugee*. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

Emphasis added. This corroboration provision is linked by its language[10] and context directly to proof "that the applicant is a *refugee*." *Id.* § 1158(b)(1)(B)(ii) (emphasis added). The statutory definition of a refugee relates exclusively to whether the applicant has suffered past persecution or has a well-founded fear of future persecution on account of a protected ground. *Id.* § 1101(a)(42)(A). This definition of a refugee contains no cross-reference to the procedural requirements for asylum, such as being physically present in the United States or filing a timely application. *See id.* In short, the corroboration language in subsection (b) stands independent of the timely filing deadline in subsection (a).

---

[10]The statutory language refers specifically to refugee status, contrary to the dissent's suggestion that we rely "solely" on the title of the statutory section to support our interpretation. *See* Dissenting op. at 8248 n.3.

**[7]** This interpretation is sensible when considering the practical application of § 1158 as a whole. Subsection 1158(a) lays out the predicate requirements that enable an individual to apply for asylum, including the one-year filing deadline. *Id.* § 1158(a)(2)(B). If the individual cannot clear those hurdles, then subsection (b) does not apply at all. A sequential reading of the two statutory subsections, the plain language of each, and the focus of subsection (b) on refugee status all point to a single conclusion: the *refugee* corroboration provision of subsection (b) does not apply to the time bar under subsection (a).[11] The BIA erred as a matter of law in applying § 1158(b)(1)(B)(ii) to Singh's showing of timely filing, because that provision applies only to the *merits* of an asylum application, not to preliminary requirements such as *timeliness*.

**[8]** As noted above, § 1158(b) was not the only corroboration provision added to the INA by the REAL ID Act. The second such corroboration provision is titled "WITHHOLD-ING OF REMOVAL" and added § 1231(b)(3)(C). 119 Stat. at 303-04. Consistent with the text of the Act, that provision governs applications for withholding of removal only. Further, the corroboration provision codified at § 1231(b)(3)(C) incorporates § 1158(b)(1)(B)(ii) by reference, including the limitation to *refugee status* determinations. There is no basis for holding that the corroboration requirement applicable to *withholding of removal* claims would apply to Singh's *asylum* application.

**[9]** The third provision is titled "OTHER REQUESTS FOR RELIEF FROM REMOVAL" and added § 1229a(c)(4). 119 Stat. at 304. The overall structure of the Act underscores

---

[11]The dissent has it upside down. We hold that the corroboration provision applies *only* to demonstration of *refugee status*, contrary to the dissent's suggestion that we have imposed this provision on all components of an individual's asylum application other than the one-year deadline. *See* Dissenting op. at 8246-47.

that this provision is distinct from the preceding section and applies to all forms of relief from removal *other than asylum or withholding of removal*. Because § 1229a(c)(4) does *not* apply to asylum applications, it follows that this section cannot apply to Singh's asylum application.

At first glance, the Act engenders some ambiguity on this point, because the codified portion of the Act, entitled "Applications for relief from removal," does not contain the word "other" and refers to "relief or protection from removal" without qualification. 8 U.S.C. § 1229a(c)(4). Looking only at the *codified* text of the Act, it may appear at first glance that § 1229a(c)(4) could apply to *all* forms of relief from removal, including asylum and withholding of removal. But that conclusion cannot be correct. In this case, the text and structure of the Act, including the title of the subsection actually adopted by Congress—"OTHER REQUESTS FOR RELIEF FROM REMOVAL"—provide a clear indication of congressional intent to exclude asylum and withholding applications from that provision. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)). The legislative history reinforces that the corroboration provision codified at § 1229a(c)(4)(B) governs "other applications for relief from removal" and *not* applications for asylum and withholding of removal. H.R. Rep. No. 109-72, at 169 (2005) (Conf. Rep.).[12] We should give effect

---

[12]The Conference Report is unambiguous:

> Other Applications for Relief. Subsection 101(d) of Division B would add a new paragraph 240(c)(4) to the INA [codified at 8 U.S.C. § 1229a(c)(4)]. This paragraph would apply the credibility and corroboration standards in section 101(a)(3) of Division B to *other* applications for relief and protection from removal. The new paragraph also codifies the current requirement that an alien applying for relief or protection from removal bears the burden of satisfying the eligibility requirements for that relief or protection . . . .

Emphasis added.

to this legislative intent—§ 1229a(c)(4)(B) applies only to applications for forms of relief other than asylum and withholding. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

**[10]** There is no mystery here whether Congress intended the REAL ID Act's corroboration provisions to apply to an asylum applicant's showing of timely filing. In the same section of the same Act, Congress added three free-standing corroboration provisions, each covering a different form of relief: one for the merits of asylum applications (section 101(a) of the Act, adding § 1158(b)(1)(B)(ii)); one for the merits of applications for withholding of removal (section 101(c) of the Act, adding § 1231(b)(3)(C)); and one for the requirements of all other forms of relief (section 101(d) of the Act, adding § 1229a(c)(4)(B)).[13] Because *none* of those provisions applies to the timeliness of an asylum application, and because no other statutory provision creates a relevant corroboration provision, the BIA erred as a matter of law in applying the corroboration provision found in § 1158(b)(1)(B)(ii) to Singh's showing that he timely filed an application for asylum.

**[11]** The question now is where our holding leaves Singh. The clear and convincing standard requires more than proof by a preponderance of the evidence and less than proof beyond a reasonable doubt. *Kenyeres*, 538 U.S. at 1305. To date, the BIA has provided neither definition nor structure to

---

[13]The dissent's complaint that our reading requires an immigration judge "to evaluate the immigrant's testimony . . . under completely different standards," Dissenting op. at 8248, is puzzling. Even the dissent acknowledges that the one-year requirement is subject to a "clear and convincing" analysis. Refugee status is governed by a preponderance of the evidence, and withholding of removal by "more probable than not." Immigration judges are quite capable of distinguishing among different standards and routinely do so under the INA.

the contours of that standard with respect to the one-year fil-
ing bar.[14] Indeed, testimony may be credible without rising to
the level of clear and convincing evidence. As a consequence,
we take no position whether, in the absence of credible testi-
mony that meets the clear and convincing standard, an immi-
gration judge may weigh the lack of reasonably available
corroborating evidence in assessing compliance with the stan-
dard. Nor do we consider whether Singh simply failed to meet
the standard here, without reference to corroborative evi-
dence, as the BIA did not address that issue. We leave those
considerations to the BIA in the first instance and remand this
case to the BIA for the agency to determine—without impos-
ing the statutory corroboration provision in
§ 1158(b)(1)(B)(ii)—whether Singh's credible testimony
unaided by corroborating evidence demonstrated by clear and
convincing evidence that Singh's application was timely.

**Petition GRANTED; REMANDED for further proceed-
ings consistent with this opinion.**

---

[14]It is worth noting that in the Asylum Officer Basic Training module
regarding the one-year deadline, the agency instructs adjudicators that tes-
timony alone may be sufficient to establish that an applicant entered
within one year of filing, noting that "[i]n most cases it would seem unrea-
sonable to require documents proving that an applicant was not physically
present in the United States at a given time. 'Proving a negative' presents
multiple problems for both the applicant and the Service." INS Asylum
Officer Basic Training, One-Year Filing Deadline (Mar. 10, 2010).

## APPENDIX

Section 101 of the REAL ID Act of 2005, PL 109-13, 119 Stat. 231, 302-06 (boldface added to section and subsection headings):

## SEC. 101. PREVENTING TERRORISTS FROM OBTAINING RELIEF FROM REMOVAL.

**(a) CONDITIONS FOR GRANTING ASYLUM**.—Section 208(b)(1) of the Immigration and Nationality Act (8 U.S.C. 1158(b)(1)) is amended—

(1) by striking "The Attorney General" the first place such term appears and inserting the following:

"(A) ELIGIBILITY.—The Secretary of Homeland Security or the Attorney General";

(2) by striking "the Attorney General" the second and third places such term appears and inserting "the Secretary of Homeland Security or the Attorney General"; and

(3) by adding at the end the following:

"(B) BURDEN OF PROOF.—

"(i) IN GENERAL.—The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 101(a)(42)(A). To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.

"(ii) SUSTAINING BURDEN.—The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record.

Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

"(iii) CREDIBILITY DETERMINATION.—Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.".

**(b) EXCEPTIONS TO ELIGIBILITY FOR ASYLUM.**— Section 208(b)(2)(A)(v) of the Immigration and Nationality Act (8 U.S.C. 1158(b)(2)(A)(v)) is amended—

(1) by striking "inadmissible under" each place such term appears and inserting "described in"; and

(2) by striking "removable under".

**(c) WITHHOLDING OF REMOVAL.**—Section 241(b)(3) of the Immigration and Nationality Act (8 U.S.C. 1231(b)(3)) is amended by adding at the end the following:

"(C) SUSTAINING BURDEN OF PROOF; CREDIBILITY DETERMINATIONS.—In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's

burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 208(b)(1)(B).".

**(d) OTHER REQUESTS FOR RELIEF FROM REMOVAL.**—Section 240(c) of the Immigration and Nationality Act (8 U.S.C. 1230(c)) is amended—

(1) by redesignating paragraphs (4), (5), and (6) as paragraphs (5), (6), and (7), respectively; and

(2) by inserting after paragraph (3) the following:

"(4) APPLICATIONS FOR RELIEF FROM REMOVAL.—

"(A) IN GENERAL.—An alien applying for relief or protection from removal has the burden of proof to establish that the alien—

"(i) satisfies the applicable eligibility requirements; and

"(ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

"(B) SUSTAINING BURDEN.—The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

"(C) CREDIBILITY DETERMINATION.—Considering the totality of the circumstances, and all relevant factors, the immigration judge may base a credibility determination on the

demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.".

**(e) STANDARD OF REVIEW FOR ORDERS OF REMOVAL.**—Section 242(b)(4) of the Immigration and Nationality Act (8 U.S.C. 1252(b)(4)) is amended by adding at the end, after subparagraph (D), the following: "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 208(b)(1)(B), 240(c)(4)(B), or 241(b)(3)(C), unless the court finds, pursuant to section 242(b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.".

**(f) CLARIFICATION OF DISCRETION.**—Section 242(a)(2)(B) of the Immigration and Nationality Act (8 U.S.C. 1252(a)(2)(B)) is amended—
(1) by inserting "or the Secretary of Homeland Security" after "Attorney General" each place such term appears; and
(2) in the matter preceding clause (i), by inserting "and regardless of whether the judgment, decision, or action is made in removal proceedings," after "other provision of law,".

**(g) REMOVAL OF CAPS.**—
(1) ASYLEES.—Section 209 of the Immigration and Nation-

ality Act (8 U.S.C. 1159) is amended—

(A) in subsection (a)(1)—

(i) by striking "Service" and inserting "Department of Homeland Security"; and

(ii) by striking "Attorney General" each place such term appears and inserting "Secretary of Homeland Security or the Attorney General";

(B) in subsection (b)—

(i) by striking "Not more" and all that follows through "asylum who—" and inserting "The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—"; and

(ii) in the matter following paragraph (5), by striking "Attorney General" and inserting "Secretary of Homeland Security or the Attorney General"; and

(C) in subsection (c), by striking "Attorney General" and inserting "Secretary of Homeland Security or the Attorney General".

(2) PERSONS RESISTING COERCIVE POPULATION CONTROL METHODS.—Section 207(a) of the Immigration and Nationality Act (8 U.S.C. 1157(a)) is amended by striking paragraph (5).

**(h) EFFECTIVE DATES.**—

(1) The amendments made by paragraphs (1) and (2) of subsection (a) shall take effect as if enacted on March 1, 2003.

(2) The amendments made by subsections (a)(3), (b), (c), and (d) shall take effect on the date of the enactment of this division and shall apply to applications for asylum, withholding, or other relief from removal made on or after such date.

(3) The amendment made by subsection (e) shall take effect on the date of the enactment of this division and shall apply to all cases in which the final administrative removal order is or was issued before, on, or after such date.

(4) The amendments made by subsection (f) shall take effect on the date of the enactment of this division and shall apply to all cases pending before any court on or after such date.

(5) The amendments made by subsection (g) shall take effect on the date of the enactment of this division.

**(i) REPEAL.**—Section 5403 of the Intelligence Reform and Terrorism Prevention Act of 2004 (Public Law 108-458) is repealed.

O'SCANNLAIN, Circuit Judge, joined by GOULD, RAWLINSON, CLIFTON, and CALLAHAN Circuit Judges, dissenting:

"Any alien who is physically present in the United States . . . may apply for asylum," 8 U.S.C. § 1158(a)(1), but *only if* he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States," *id.* § 1158(a)(2)(B). Here, the Immigration Judge ("IJ") was not convinced by Nirmal Singh's mere verbal assertions, credible as the petitioner may be, and thus required Singh to come forward with evidence corroborating his alleged date of entry. When Singh failed to do so, the IJ dismissed his application as time-barred, and the Board of Immigration Appeals ("BIA") affirmed, noting correctly that the burden of proof on granting asylum empowers an IJ to seek corroborating evidence from an otherwise credible witness.

Because the plain terms of the statutory scheme allow an IJ to seek corroboration from an applicant seeking to demonstrate his eligibility for asylum, and because the majority's reading would variegate an otherwise uniform statute, I respectfully dissent.

I

Our old rule that "the BIA may not require independent corroborative evidence from an asylum applicant who testifies credibly in support of his application," *Kataria v. INS*, 232 F.3d 1107, 1113 (9th Cir. 2000), has been formally extinguished. For asylum applications filed after May 11, 2005,[1] "Congress abrogated these holdings in the REAL ID Act of

---

[1] REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305; *Oyekunle v. Gonzales*, 498 F.3d 715, 717 (7th Cir. 2007) ("For aliens who applied for asylum after May 11, 2005[, the REAL ID Act] in effect codifies the [corroboration] rule . . . .").

2005." *Aden v. Holder*, 589 F.3d 1040, 1044 (9th Cir. 2009). Instead, while credible testimony still *can*, in some circumstances, sustain the applicant's burden of proof, it does not *automatically* do so. *See* 8 U.S.C. § 1158 (b)(1)(B)(ii) ("[T]he testimony of the applicant *may* be sufficient to sustain the applicant's burden without corroboration, *but only if* the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." (emphasis added)). Now, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* Thus, credible testimony *may* be sufficient to satisfy the applicant's burden of proof, but the Act also enables the trier of fact to require something more. To the extent our prior decisions hold to the contrary, they are superseded by the REAL ID Act. *Aden*, 589 F.3d at 1044.

That, more or less, should end the matter in this case. Although the IJ found Singh to be credible, the IJ concluded that Singh had not sustained his burden of demonstrating his date of entry into the United States through his testimony alone. The IJ thus required Singh to provide corroborating evidence of his alleged date of entry, which he failed to do. As the BIA concluded, such request was fully within the IJ's power, and there was no error in rejecting Singh's application as untimely.

II

The majority rejects all of this by concluding that 8 U.S.C. § 1158(b)(1)(B)(ii)—which explicitly provides for the IJ's authority to require corroborating evidence—applies to everything in an asylum applicant's burden *except* his duty to establish the timeliness of his application. As the majority would have it, no provision of the REAL ID Act explicates how an

IJ may ensure that an immigrant has successfully demonstrated his date of entry by "clear and convincing evidence." In light of the statute taken as a whole, I cannot agree with the majority's conclusion.[2]

A

First, contrary to the majority's suggestion, the text of the section 1158(b)(1)(B)(ii) does not restrict the IJ's authority to seek corroborating evidence only to whether the applicant is a "refugee." Rather, this section speaks generally of "the applicant's burden" for demonstrating his eligibility for asylum, and states that, to sustain such burden, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). In order to demonstrate his eligibility for asylum, an asylum applicant must prove *both* that he has filed his application within one year after his entry into the United States *and* that he meets the statutory definition of a "refugee." *See id.* §§ 1158(a)-(b). In other words, an asylum applicant's "burden" for prevailing on his application *necessarily includes* the burden of establishing his date of entry.

Section 1158(b)(1)(B)(ii)'s discussion of the applicant's ability to sustain his "burden" thus refers to Singh's need to demonstrate his eligibility as a refugee meeting all statutory requirements for asylum. And because the text of such section nowhere limits its scope only to the determination of one *portion* of the applicant's statutory burden, as the majority sug-

---

[2]The majority does not dispute that Singh's need to establish his date of entry by "clear and convincing evidence," 8 U.S.C. § 1158(a)(2)(B), may inherently empower the IJ to require corroborating evidence of such date. The only question enunciated by the majority, however, is whether the BIA erred in explicitly consulting section 1158(b)(1)(B)(ii) in affirming the IJ's actions.

gests, the BIA did not err in consulting the section in affirming the IJ's decision.[3]

B

Moreover, although the majority suggests that structural elements of section 1158 leave some ambiguity as to the scope of subsection (b)(1)(B)(ii), I cannot conclude, as the majority does, that this structure was meant to frustrate the IJ's efforts to determine whether an applicant had provided clear and convincing evidence of his date of entry. As discussed, establishing both the timeliness of his application and his status as a "refugee" are necessary to an immigrant's successful asylum application. But under the majority's view, an IJ will be forced to evaluate the immigrant's testimony on these two questions under completely different standards. Under the majority opinion, an IJ will assess the question of an applicant's refugee status under section 1158(b)(1)(B)(ii), but will assess the timeliness of his application without regard to *any* provision explaining the applicant's standard for sustaining his burden. The text of the statute does not create such a divide, and there is no reason that we should.

Indeed, taking the statute as a whole, the analytical divide created by the majority's analysis goes far beyond the provisions dealing with asylum applications. The majority explains that the statute is divided into three general sections, each

---

[3]The majority suggests that its reading of the statute—which relies solely on the titles Congress ascribed to certain statutory subsections, many of which were not even codified in the United States Code—is compelled by the statute's text and through "[b]asic principles of statutory construction." Majority Op. at 8227. Yet, tellingly, the majority concludes that under a precedential order, the BIA's interpretation of the statute may be entitled to "some deference." Majority Op. at 8228 n.4. Because administrative deference is applicable only where a statute is ambiguous, *see Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 392 (9th Cir. 2011), I take this caveat to be an admission by the majority that its reading of the statute is indeed *not* compelled by the statute's text.

dealing with a different form of relief: section 1158 pertains to applications for asylum, section 1231(b)(3) pertains to withholding of removal, and section 1229a(c)(4) pertains to "other" requests for relief. *See* Majority Op. at 8234-36. But each of these sections contains a nearly identical provision that expressly permits an IJ to require corroborating evidence from an otherwise credible witness. *See* 8 U.S.C. §§ 1158(b)(1)(B)(ii); 1229a(c)(4)(B); 1231(b)(3)(C). Read together, these provisions set forth a single overarching corroboration standard for sustaining an immigrant's burden of proving his eligibility for *any* form of relief under the statute. Indeed, throughout the REAL ID Act, "Congress has installed a bias toward corroboration in the statute to provide greater reliability." *Aden*, 589 F.3d at 1045. And we treat the BIA's application of these corroboration provisions identically on review. *See* § 1252(b)(4)(D).

But the majority isolates Singh's testimony as to his date of entry from this uniform standard for assessing his credibility on *all other* matters relating to his requests for relief. This move is neither compelled by the statute's text, nor does it comply with the statute's general aim to "ma[ke] immigration litigation a little more like other litigation," where parties with the burden of proof ordinarily provide whatever corroboration they have when presenting their case.[4] *Aden*, 589 F.3d at 1045. In short, the majority has sidestepped the sweep of the statute's text to remove one of the most basic features of an asylum application from the statute's general corroboration standards.

---

[4]This is a basic aspect of the REAL ID Act that the majority seems either to miss or to gloss over. Indeed, as we have previously recognized, with the REAL ID Act, Congress "changed the standard governing when a trier of fact may require corroborating evidence from where the evidence is 'easily available' to where the evidence is 'reasonably obtainable,' and imposed a heightened standard of review requiring that we reverse an agency's determination concerning the availability of corroborative evidence only if a reasonable trier of fact would be compelled to conclude that such corroborating evidence is unavailable." *Shrestha v. Holder*, 590 F.3d 1034, 1047-48 (9th Cir. 2010) (citations omitted).

                              III

   In the case at hand, the IJ made no adverse credibility find-
ing against Singh, but ultimately determined that he had not
satisfied his burden of proving his date of entry by clear and
convincing evidence. To meet that burden, the IJ sought cor-
roborating evidence from Singh, which he failed to provide.
As Singh admitted that he had no documents to corroborate
his date of entry, it was his burden to explain its absence. *In
re J-Y-C-*, 24 I. & N. Dec. 260, 263 (B.I.A. 2007). Aside from
his bald assertion that he "could not reasonably be expected
to provide proof of when he entered the United States," the
record is devoid of any indication from Singh as to why he
was unable to corroborate a such a basic fact.

   Without either evidence corroborating Singh's self-serving
declaration of his date of entry or an explanation for the
unavailability of such evidence, I have no choice but to con-
clude that the IJ did not err in barring Singh's application as
untimely.[5]

---

   [5]I note that the court lacks jurisdiction to consider Singh's claim that the
REAL ID Act required the IJ to notify him of his need to present corrobo-
rating evidence and to provide him with an opportunity to bring forth such
evidence, as Singh never exhausted this issue before the BIA. *See* 8 U.S.C.
§ 1252(d)(1); *Barron v. Ashcroft*, 383 F.3d 674, 677-78 (9th Cir. 2004).