**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

DANDINO, INC.,

*Petitioner*,

v.

U.S. DEPARTMENT OF
TRANSPORTATION; FEDERAL MOTOR
CARRIER SAFETY ADMINISTRATION,

*Respondents*.
</td><td>

No. 11-72113

OPINION
</td></tr>
</table>

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

Argued and Submitted
April 10, 2013—Pasadena, California

Filed August 30, 2013

Before: Richard C. Tallman and Milan D. Smith, Jr.,
Circuit Judges, and Lee H. Rosenthal, District Judge.[*]

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Lee H. Rosenthal, District Judge for the U.S. District Court for the Southern District of Texas, sitting by designation.

## SUMMARY[**]

### Federal Motor Carrier Safety Administration

The panel dismissed a petition for review of a decision of the Federal Motor Carrier Safety Administration affirming a penalty issued against the petitioner, a motor carrier of household goods, for transporting goods after the Agency had revoked its operating authority.

The panel held that the petition was timely filed because 49 U.S.C. § 521(b)(9) permits a party to file a petition for review with the proper court of appeals within 30 days of actual notice of the Agency's final order. The panel further held that for purposes of § 521(b)(9), when a final Agency order is mailed to a party, and there is not proof of actual receipt, there is a rebuttable presumption that the order was received within three days of mailing. The panel also held that although the petition was timely filed, it lacked merit.

## COUNSEL

Jeffrey D. Nadel (argued), Law Office of Jeffrey D. Nadel, Encino, California, for Petitioner.

Jonathan H. Levy (argued), Michael Jay Singer, and Constance A. Wynn, Attorneys; Tony West, Assistant Attorney General; Stuart F. Delery, Acting Assistant Attorney

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

General; United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

## OPINION

M. SMITH, Circuit Judge:

Dandino, Inc. petitions under 49 U.S.C. § 521(b)(9) for review of an order of the Federal Motor Carrier Safety Administration (FMCSA, or the Agency). The Agency asserts that Dandino's petition is untimely, and should be dismissed without consideration of its merits. Because we hold that § 521(b)(9) permits a party to file a petition for review with the proper court of appeals within 30 days of actual notice of the FMCSA's final order, we conclude that Dandino's petition was filed timely. However, we also find that Dandino's petition lacks merit, and we affirm the Agency's order.

## BACKGROUND AND JURISDICTION

The FMCSA, an agency within the Department of Transportation (DOT), has authority to impose civil penalties on certain persons and entities who violate DOT regulations. 49 U.S.C. § 521. Parties adversely affected by final agency orders imposing such penalties are entitled to seek review of such orders by a court of appeals. § 521(b)(9).

Dandino is a motor carrier of household goods. It applied to the FMCSA to change its company name from "Dandino Inc. d/b/a Relo Moving" to "Dandino Inc. d/b/a Winston." The FMCSA approved the name change. In the same order, it also gave notice that:

> Within 30 days after this decision is served,
> the applicant must establish that it is in full
> compliance with the statute and the insurance
> regulations . . . . The applicant is notified that
> failure to comply with the terms of this
> decision shall result in revocation of its
> operating rights registration, effective 30 days
> from the service date of this decision.

Despite the notice, Dandino failed to demonstrate timely to the Agency that it was in compliance with all applicable laws and regulations. The Agency then sent Dandino a second notice reading, in pertinent part:

> The transportation entity, having failed to
> comply with the terms of the decision, is
> hereby notified that its authority registration
> has been revoked effective July 26, 2010.

Dandino eventually provided the Agency with proof that it was in compliance with the regulations, and the Agency reinstated Dandino's registration, effective August 23, 2010. However, during the gap period between July 26 and August 23, 2010, Dandino transported household goods from California to Texas on or about August 1, 2010—a fact Dandino does not dispute.

The FMCSA fined Dandino for transporting goods after the Agency had revoked its operating authority, and before that authority was reinstated. Dandino disputed the penalty in a proceeding before the Agency. The FMCSA issued a nine-page final order (Order), signed on June 23, 2011, affirming the penalty. According to the Certificate of Service attached to the Order, the Agency sent the Order to Dandino

by U.S. mail on June 24, 2011. Dandino petitioned our court for review of the Order on July 26, 2011.

We have jurisdiction to review final civil penalty orders of the Agency pursuant to 49 U.S.C § 521(b)(9).

## DISCUSSION

### A.

In order to determine whether Dandino's petition was timely, we must first determine when it was due. In order to make that determination, we look to the statute that grants us jurisdiction to review the Order. That statute provides:

> Any aggrieved person who, after a hearing, is adversely affected by a final order issued under this section may, within 30 days, petition for review of the order in the United States Court of Appeals in the circuit wherein the violation is alleged to have occurred or where the violator has his principal place of business or residence . . . .

49 U.S.C § 521(b)(9). Dandino notes that the statutory text begs a question: a petition for review is due "within 30 days," but "within 30 days" of what?

In order to clarify this ambiguity, we "begin, as always, with the language of the statute," in an attempt to divine the intent of Congress. *See Duncan v. Walker*, 533 U.S. 167, 172 (2001); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). The statute says that an "aggrieved person who, after a hearing, is adversely affected by a final order

issued under this section" may appeal to a court of appeals. The statutory language suggests that the 30-day filing period begins on the day the "aggrieved person" is "adversely affected" by the FMCSA's final order. But how can a person know that he has been "adversely affected" by such an order unless he has received the order and considered its contents? Common sense suggests that he cannot. We therefore conclude that the plain language of the statute strongly suggests that Congress intended the 30-day period to begin running from the date that the person adversely affected by the final order receives notice of the decision.

The FMCSA argues instead that the limitations period runs from "issuance" of the final agency order. This argument is problematic, because the meaning suggested by the Agency does not follow from the wording of the statute itself. The term "issued under this section" serves to further define the "final order" to which it refers, but has no direct connection to the "30 day" proviso. The Ninth Circuit authority on which the Agency relies does not suggest otherwise. In each of those cases, Congress specifically stated that the period ran from the "issuance" of an order. *See Dierkes v. Dep't of Labor*, 397 F.3d 1246, 1247 (9th Cir. 2005) (interpreting statute stating that "[t]he petition for review must be filed within sixty days from the issuance of the Secretary's order"); *Haroutunian v. INS*, 87 F.3d 374, 375 (9th Cir. 1996) (interpreting statute stating that "a petition for review may be filed . . . not later than 30 days after the issuance of such order"); *Stevedoring Servs. of Am. v. Dir., Office of Workers' Comp. Programs*, 29 F.3d 513, 515 n.2 (9th Cir. 1994) (interpreting statute stating that "any person adversely affected or aggrieved by a final order may obtain a review of that order . . . by filing in such court within sixty days following the issuance of such Board order a written

petition"). Given these repeated instances in which Congress has expressly stated that a period begins with the "issuance" of an order, the Agency has not explained why Congress declined to do so here. We therefore reject the Agency's suggestion that the limitations period runs from issuance of the order. We hold instead that under § 521(b)(9), a party may file a petition with the appropriate court of appeals for review of a final agency order within 30 days of actual notice of the order.[1]

## B.

We next consider when a party actually receives notice of a final agency order. When an order is sent by certified mail, return receipt requested, or delivered by some other means that results in a proof of receipt, or an affidavit of personal

---

[1] The DOT has promulgated a regulation that may conflict with our holding. The regulation, 49 C.F.R. § 386.67(a), parrots the text of § 529(b)(9), except that it addresses the ambiguity by explaining that a party may petition a court of appeal for review "within 30 days *of service of the Final Agency Order*." 49 C.F.R. § 386.67(a) (emphasis added). We do not defer to the DOT's regulation. It is well-established that "[t]he Agency's position on [our] jurisdiction is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)." *Children's Earth Found. v. EPA*, 527 F.3d 842, 846 n.3 (9th Cir. 2008); *see also Lindstrom v. United States*, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007) ("Determining federal court jurisdiction is exclusively the province of the courts regardless of what an agency may say.") (internal quotation marks and citation omitted); *Murphy Exploration & Prod. Co. v. U.S. Dep't of the Interior*, 252 F.3d 473, 478 (D.C. Cir. 2001) ("*Chevron* [deference] does not apply to statutes that . . . confer jurisdiction on the federal courts."); *Bamidele v. INS*, 99 F.3d 557, 561 (3d Cir. 1996) ("A statute of limitations is not a matter within the particular expertise of the INS. Rather, we consider this a clearly legal issue that courts are better equipped to handle.") (internal quotation marks and citation omitted).

delivery, the date of actual notice is easily ascertained. However, when a document is posted without certification and a return receipt request in the U.S. mail, as it was here, it is not always clear if or when the party received the document.[2]

Generally, "[u]nder the common law Mailbox Rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) (internal quotation marks and citations omitted). But even if we presume that a posted document ultimately arrived, that does not tell us *when* we presume it to have arrived. Since posted materials almost never arrive at their intended destination on the day they are mailed, we must consider relevant authorities to determine what presumptions may apply regarding when a posted document is presumed to have been received.

The United States Postal Service's regulations state that first class mail sent within the contiguous United States will arrive within three days. 39 C.F.R. § 121, App. A. We and other circuits have relied on this assumption in our case law. *See, e.g.*, *Mendez v. Knowles*, 556 F.3d 757, 765 (9th Cir. 2009) ("[T]he Postal Service advises its customers that first-class mail takes one to three days for delivery . . . ."); *Lindemood v. Comm'r of Internal Revenue*, 566 F.2d 646, 647 (9th Cir. 1977) ("[T]he normal delivery time for first-class mail sent from San Francisco to Washington, D. C., is three days . . . ."); *see also Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 436 (6th Cir. 2007) ("[T]he usual delivery time

---

[2] In this case, Dandino does not dispute that it received the Order, but the record contains no proof of when it was received.

for first-class mail is one to three days[.]"). Moreover, the United States Supreme Court has also assumed that a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC) was received three days after mailing. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984).

Similarly, the rules of the respective federal courts all assume that mail will take three days to arrive at its destination. Those rules provide that when a party must act within a certain number of days of service of a document, and that document is served by mail, the deadline is extended by three days. Fed. R. App. P. 26(c); Fed. R. Civ. P. 6(d); Fed. R. Crim. P. 45(c); Fed. R. Bankr. P. 9006(f). Just as we conclude that it was Congress's intent that a party have a full 30 days to petition for review upon actual notice of a final Agency order, the rules of procedure are written to allow responding parties the full benefit of the applicable time limits *after* receiving the document being served.[3]

The three-day presumption thus has been long applied, and we have previously read it into an analogous statute of limitations that begins to run from actual notice of a decision. Specifically, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, a party may only file a civil suit in federal district court under Title VII upon receiving a right-to-sue letter from the Equal Employment Opportunity

---

[3] Notably, the Agency itself makes allowances for mail delivery delays in its own proceedings, and grants litigants an even more generous allowance than do the courts. The DOT regulation provides that "[w]henever a party has a right or a duty to act or to make any response within a prescribed period after service by mail, or on a date certain after service by mail, 5 days will be added to the prescribed period." 49 C.F.R. § 386.8(c)(3).

Commission. Upon receiving the letter, a party must file suit "within ninety days after the giving of such notice." 42 U.S.C. § 2000e-5(f)(1). In that context, "[w]e measure the start of the limitations period from the date on which a right-to-sue notice letter arrived at the claimant's address of record." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007).

In actions under Title VII, "[w]here the actual date of receipt is unknown but receipt itself is not disputed, we have not demanded proof of actual receipt but have applied a presumption to approximate receipt." *Id*. at 1122 (citing *Ortez v. Washington County*, 88 F.3d 804, 807 (9th Cir. 1996)). Following the Supreme Court's lead in *Baldwin*, we read into Title VII a rebuttable presumption that, for purposes of determining when notice was actually given, a document is received three days after the date it was mailed. *Id*. at 1121.

Because the Postal Service's regulations and our case law assume that most first class mail will be delivered within three days of mailing, and because we have read that presumption into Title VII's analogous statute of limitations, we will again follow the Supreme Court's lead in *Baldwin*, and hold that for purposes of § 521(b)(9), when a final Agency order is mailed to a party, and there is no proof of actual receipt, there is a rebuttable presumption that the order was received within three days of mailing.[4]

---

[4] The three-day period does not include the day of mailing, but does include the last day of the period. However, if the last day of the period is a Sunday or legal holiday, the period continues to run until the end of the next day that is not a Sunday or legal holiday. Our holding, though, does not preclude the Agency from proving that notice occurred earlier.

Applying our holding to this case, Dandino's petition is timely. According to the date on the Certificate of Service, the Order was mailed on Friday, June 24, 2011. We will presume that Dandino received the Order three days later, on Monday, June 27, 2011. Accordingly, Dandino had 30 days from June 27, 2011 to file his petition for review with our court. The thirtieth day from June 27, 2011 was July 27, 2011. Dandino timely filed his petition on July 26, 2011, one day before the final day to file.

## C.

Although we determine that Dandino's petition was timely filed, it lacks merit. Motor carriers must be registered by the Secretary of Transportation in order to lawfully transport goods for hire. 49 U.S.C. § 13902. The Secretary is authorized by statute, "on the Secretary's own initiative," to "suspend, amend, or revoke any part of the registration of a motor carrier . . . for willful failure to comply with . . . an applicable regulation or order of the Secretary . . . or a condition of its registration . . . ." 49 U.S.C. § 13905(d). The statute requires that, before the Agency may revoke a carrier's registration, it must issue an order requiring compliance and allow the registrant 30 days to comply. 49 U.S.C. § 13905(e).

This is precisely what the FMCSA did in this case. The Agency notified Dandino that, upon Agency approval of its name change, it had 30 days to "establish that it is in full compliance with the statute and the insurance regulations." Dandino failed to provide evidence to the Agency that it was

in compliance within the requisite 30-day period.[5]  Since it had not received proof of Dandino's compliance, the Agency revoked Dandino's registration.   Flouting the Agency's decision, Dandino carried freight for hire during the period when it was not authorized by the Agency.

In response to Dandino's action, the FMCSA fined Dandino for violating the DOT's regulations.  The regulation Dandino violated states that "a motor vehicle providing transportation requiring operating authority must not be operated . . . [w]ithout the required operating authority." 49 C.F.R. § 392.9a.   The regulations also explain that "[o]perating authority means the registration required by 49 U.S.C. [§] 13902 . . . ."  49 C.F.R. § 390.5.  Therefore, when the FMCSA revoked Dandino's registration under Chapter 139, Dandino lacked operating authority.  Continuing to operate without operating authority was a violation of 49 C.F.R. § 392.9a, for which Dandino was fined.

In challenging the fine imposed by the Agency, Dandino misunderstands the nature of the Agency's action against it. Dandino argues that it was, at all pertinent times, registered under Chapter 139, and that "the only revocation was of operating authority."   But the revocation of its "operating authority" is the very thing for which Dandino was fined, specifically for: operating "without the required operating authority" in violation of 49 C.F.R. § 392.9a.   Dandino's

---

[5] Dandino argues that it was insured at all relevant times.  Dandino misunderstands the requirement of the law.  The issue is not whether Dandino was insured, but whether it had demonstrated that fact to the Agency before it revoked Dandino's registration. The record contains no indication that Dandino presented any such evidence to the FMCSA after it was directed to do so in connection with its name change, and before its operating authority was revoked.

concession that it operated "without the required operating authority" is dispositive of its petition on the merits.

Finally, Dandino argues that it was arbitrary and capricious for the DOT to define "operating authority," a term it uses in its regulations, to mean "registration" as defined under Chapter 139.  This argument has no relevant legal support whatsoever, and Dandino cites none.  Accordingly, we reject it.

**DISMISSED.**