**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMA ABDIAZIZ ABDISALAN,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 10-73215<br><br>Agency No.<br>A095-406-303 |

| | |
|---|---|
| SAMA ABDIAZIZ ABDISALAN,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 11-71124<br><br>Agency No.<br>A095-406-303<br><br>ORDER AND<br>AMENDED<br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted En Banc
June 19, 2014—Seattle, Washington

Filed December 15, 2014

Amended January 6, 2015

Before: Sidney R. Thomas, Chief Judge, and Alex
Kozinski, Kim McLane Wardlaw, Ronald M. Gould,
Richard A. Paez, Marsha S. Berzon, Richard C. Tallman,
Sandra S. Ikuta, Mary H. Murguia, Jacqueline H. Nguyen,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Wardlaw

## SUMMARY[*]

### Immigration

Overruling *Li v. Holder*, 656 F.3d 898 (9th Cir. 2011), as
well as *Annachamy v. Holder*, 733 F.3d 254 (9th Cir. 2013),
to the extent it relied on *Li*, the en banc court held that when
the Board of Immigration Appeals issues a decision that
denies some claims, but remands any other claims for relief
to an Immigration Judge for further proceedings, the Board
decision is not a final order of removal with regard to any of
the claims, and it does not trigger the thirty-day window in
which to file a petition for review.

The court explained that its holding renders premature
any pending petitions for review that were filed in this court
while background checks or other remanded proceedings

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

were ongoing, but that it would be unfair to punish those petitioners who reasonably relied on *Li* in filing their premature petitions. The court therefore held that any pending petitions rendered premature by today's decision shall be treated as automatically ripening into timely petitions upon the completion of remanded proceedings, regardless of whether those proceedings have already concluded. The court noted that its holding extends only to petitioners whose petitions for review were filed in this court before the date of this decision.

The court noted that, under the facts of this case, it need not revisit the rule in *Pinto v. Holder*, 648 F.3d 976, 980 (9th Cir. 2011), and *Castrejon-Garcia v. INS*, 60 F.3d 1359, 1361-62 (9th Cir. 1995), that the Board's decision is a final order of removal when it remands for consideration of voluntary departure, but denies all other forms of relief.

In light of its holding regarding finality, the court held that it had jurisdiction to consider petitioner's challenge to the Board's determination that her asylum application was time-barred.

The court remanded, as it did in *Singh v. Holder*, 649 F.3d 1161, 1164-65 (9th Cir. 2011) (en banc), for the Board to address in the first instance whether an asylum applicant's credible and uncontradicted testimony regarding her date of entry meets the statutory "clear and convincing evidence" standard for timeliness.

## COUNSEL

Vicky Dobrin and Hilary Han (argued), Dobrin & Han, PC, Seattle, Washington, for Petitioner.

Linda Y. Cheng, Patrick J. Glen, and Jesi J. Carlson (argued), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

Deborah S. Smith, University of Idaho College of Law, Moscow, Idaho, for Amicus Curiae American Immigration Lawyers Association.

Charles Roth, Chicago, Illinois, for Amicus Curiae National Immigration Justice Center.

## ORDER

Respondent's unopposed motion to amend the decision in this case is granted. The opinion filed on December 15, 2014 is hereby amended as follows. Change the last sentence of footnote 3 on page 8 to read as follows:

> Alternatively, the Attorney General may deny relief but permit voluntary departure if the applicant is not removable due to an aggravated felony or terrorist activity, *inter alia*. *See* 8 U.S.C. § 1229c(b).

**IT IS SO ORDERED.**

# OPINION

WARDLAW, Circuit Judge:

When does an order of removal become "final" for the purpose of seeking judicial review? Panels of our court have reached varying conclusions, creating unnecessary confusion as to the timeliness of petitions for review and our jurisdiction to entertain them. We reheard this matter en banc to clarify the issue of finality of the Board of Immigration Appeals' ("BIA") decisions. Today, we adopt a straightforward rule: when the Board of Immigration Appeals issues a decision that denies some claims but remands any other claims for relief to an Immigration Judge ("IJ") for further proceedings (a "mixed" decision),[1] the BIA decision is not a final order of removal with regard to any of the claims, and it does not trigger the thirty-day window in which to file a petition for review.

As a result, we have jurisdiction to consider petitioner's asylum claim, but we remand to the BIA in light of *Singh v. Holder*, 649 F.3d 1161 (9th Cir. 2011) (en banc).

---

[1] There are several ways that an alien could be eligible for certain forms of relief but ineligible for others. For instance, she could meet the "well-founded fear" bar for asylum but fail to meet the stricter "more likely than not" standard for withholding of removal and CAT. *See Ahmed v. Keisler*, 504 F.3d 1183, 1199–1200 (9th Cir. 2007). Alternatively, because the standard for asylum includes a one-year filing limitation, *see* 8 U.S.C. § 1158(a)(2)(B), whereas withholding and CAT do not, an applicant could be eligible for withholding or CAT relief but not asylum. Here, for example, the IJ found that Abdisalan qualified for withholding of removal, but also concluded that she was ineligible for asylum because she failed to file her application within one year of entering the United States.

## I.

Sama Abdiaziz Abdisalan is a 36-year-old native and citizen of Somalia.  Abdisalan asserts that she entered the United States in February 2002.  On March 25, 2002, Abdisalan filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  She claimed that in Somalia, she was forced to undergo female genital mutilation and was kidnapped and raped by members of a rival clan.  Abdisalan appeared at a merits hearing before an IJ in 2007.  The IJ found that Abdisalan was credible, but denied her asylum claim as time-barred, concluding that she had not demonstrated by clear and convincing evidence that she filed her asylum application within one year of arriving in the United States.  The IJ did, however, grant Abdisalan withholding of removal as to Somalia.**[2]**

Abdisalan appealed the IJ's asylum determination, and the Government declined to challenge the IJ's grant of withholding.  In November 2008, the BIA affirmed the IJ's denial of Abdisalan's asylum claim and remanded for background checks related to her withholding claim. Abdisalan did not file a petition for review of the BIA's 2008 decision.

In June 2009, the Government completed its background checks, and the IJ issued another order granting Abdisalan withholding of removal.  Abdisalan again appealed to the BIA, challenging the agency's previous determination that her asylum claim was time-barred.  The BIA treated this

---

**[2]** The IJ also denied Abdisalan's CAT claim on the merits.  Abdisalan did not appeal this claim to the BIA.

appeal as an untimely motion to reconsider and dismissed it in a September 2010 decision. The BIA again remanded the matter to the IJ for updated background checks. Finally, in March 2011, the IJ issued an order confirming that Abdisalan had completed another round of background checks. This order also reaffirmed the grant of withholding and reiterated that Abdisalan's asylum claim had been denied. Abdisalan then filed in this court petitions for review of the 2010 BIA decision and the 2011 IJ order, challenging the finding that her asylum claim is time-barred. The two petitions have been consolidated for our review.

A divided three-judge panel of our court held that it lacked jurisdiction over Abdisalan's consolidated petition because she failed to file a petition for review within thirty days of the BIA's 2008 decision affirming the IJ's denial of her asylum claim. *Abdisalan v. Holder*, 728 F.3d 1122, 1125 (9th Cir. 2013). A majority of active, nonrecused judges voted to rehear the petition for review en banc. 750 F.3d 1098 (9th Cir. 2014).

## II.

We have jurisdiction to determine our own jurisdiction. *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000). In this instance, whether we have jurisdiction is a purely legal question, which we determine de novo. *Annachamy v. Holder*, 733 F.3d 254, 258 (9th Cir. 2013).

**III.**

**A.**

A "petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). This time limit is "mandatory and jurisdictional." *Stone v. INS*, 514 U.S. 386, 405 (1995) (internal quotation marks omitted). As a result, the "point at which a removal order becomes final is critical for the purposes of timely petitioning for judicial review." *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012).

In the ordinary case, this point is easy to determine: the thirty-day clock begins to run when the BIA issues a decision that affirms in full the IJ's order of removal. However, as here, an alien often seeks more than one avenue of relief from deportation in a single application. Commonly the alien will seek asylum, withholding of removal, and CAT relief, or, in the alternative, voluntary departure. The standards for obtaining such relief vary,[3] so that, for example, an alien may be able to obtain withholding but not asylum. Finality is less obvious when the BIA affirms the denial of relief on some of an alien's claims for relief but remands to the IJ for further

---

[3] An applicant for asylum must show "a well-founded fear of persecution on account of" one of five protected grounds. 8 U.S.C. § 1101(a)(42)(A). An applicant for withholding of removal must show that her "life or freedom would be threatened" on account of one of those same protected grounds. 8 U.S.C. § 1231(b)(3)(A). To qualify for relief under CAT, an applicant must establish that "it is more likely than not that he or she would be tortured." 8 C.F.R. § 208.16(c)(2). Alternatively, the Attorney General may deny relief but permit voluntary departure if the applicant is not removable due to an aggravated felony or terrorist activity, *inter alia*. *See* 8 U.S.C. § 1229c(b).

proceedings on others in a "mixed" decision. Does that BIA decision constitute a "final order of removal" with regard to the claims denied? To date, we have offered conflicting answers to that question.

In *Go v. Holder*, 640 F.3d 1047 (9th Cir. 2011), the IJ denied the petitioner's asylum, withholding, and CAT claims. The BIA affirmed as to asylum and withholding, but remanded for further consideration of the petitioner's CAT claim. *Id.* at 1050. After additional proceedings before the IJ, the BIA affirmed the denial of CAT relief. *Id.* at 1051. The petitioner never filed a petition for review of the first BIA decision, but he timely filed a petition challenging the second BIA decision, seeking judicial review of all three claims. *Id.* We held that "because Go's removal order did not become final until the Board rejected each of his claims for relief, . . . our jurisdiction extends to each of his claims." *Id.* at 1052. We acknowledged that the BIA's first decision "may have been the final administrative decision with respect to Go's eligibility for asylum and withholding relief," but explained that "that decision was not a final order of removal because it left open the possibility that Go might obtain CAT relief" and therefore avoid removal. *Id.* at 1051.

We reached a contrary conclusion in *Li v. Holder*, 656 F.3d 898 (9th Cir. 2011)*.* In *Li*, the IJ denied the petitioner's asylum claim but granted withholding of removal. *Id.* at 900. On appeal, the BIA affirmed the IJ's denial of asylum, but as in Abdisalan's case, remanded the matter to the IJ "to complete background checks required before withholding of removal can be granted." *Id.* at 899. We held that the BIA decision was a "final order" as to the petitioner's asylum claim because it "was not the subject of the remand, and the board considered and decided the merits

of the [asylum] appeal before dismissing it." *Id.* at 904. We therefore concluded that "where the BIA denies [one form of] relief and remands . . . for background checks required for alternative relief, we have jurisdiction to consider an appeal of the final order denying relief." *Id.*

In *Ortiz-Alfaro*, we recognized that "*Go* appears to be at odds with *Li*." 694 F.3d at 959. We attempted to sidestep that tension by observing that in both *Go* and *Li*, "all administrative proceedings had concluded at the time we decided that we had jurisdiction." *Id.* We held that we lacked jurisdiction over Ortiz-Alfaro's petition because "administrative proceedings are ongoing in [his] case." *Id.* Despite our efforts in *Ortiz-Alfaro*, the divided *Abdisalan* panel opinion correctly perceived an intractable conflict between *Go* and *Li*.[4] We agreed to rehear this case en banc to resolve that conflict.

The stakes for Abdisalan are high: if the BIA's 2008 decision was a final order of removal with regard to her asylum claim, as in *Li*, then she lost her opportunity to

---

[4] Our sister circuits have also reached divergent holdings on this issue. The Seventh Circuit has held that a BIA decision denying some claims but remanding others is final with regard to the claims denied. *Viracacha v. Mukasey*, 518 F.3d 511, 513 (7th Cir. 2008) (holding that BIA's decision affirming denial of asylum but remanding for completion of background checks related to withholding was a reviewable "final order" as to asylum). The Third and Eighth Circuits, however, have held that a mixed BIA decision is not final. *Vakker v. Att'y Gen. of the U.S.*, 519 F.3d 143, 147–48 (3d Cir. 2008) (holding that BIA's decision was not a "final order of removal" because it "did not finally adjudicate all issues in the proceeding in which it was entered"); *Goromou v. Holder*, 721 F.3d 569, 576 n.6 (8th Cir. 2013) (holding that BIA decision affirming denial of asylum but remanding for completion of background checks "is a non-final order for purposes of judicial review").

challenge the agency's denial of that claim when she failed to file a petition for review of the 2008 decision. But if the BIA's 2008 decision was not a final order of removal, as in *Go*, then we have jurisdiction to review Abdisalan's asylum claim as part of her subsequent petitions for review. This difference is not without significance.[5] Both Abdisalan and the Government urge us to follow *Go* and overrule *Li*. Because *Go*'s approach better aligns with the text of the Immigration and Nationality Act ("INA") and the agency's implicit interpretations of the INA, we agree.

**B.**

We begin with our own jurisdictional statute, 8 U.S.C. § 1252. We have jurisdiction to review "a final order of removal." *Id.* § 1252(a)(1). Congress has defined an order of removal[6] as "the order" of the IJ "concluding that the alien is deportable or ordering deportation." *Id.* § 1101(a)(47)(A). "The order" then becomes "final upon the earlier of":

> (i) a determination by the Board of Immigration Appeals affirming such order; or

---

[5] The grant of asylum is a broader form of relief that sets one on a path to citizenship. One year after being granted asylum, an asylee may apply for adjustment of status to lawful permanent resident. *See* 8 U.S.C. § 1159(b). In contrast, the grant of withholding of removal merely prevents one from being removed to the country where one's life or freedom would be threatened on account of a protected ground. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999).

[6] The INA refers to an "order of deportation," but its definition also applies to the post-REAL ID Act term "order of removal." *Singh v. Gonzales*, 499 F.3d 969, 979 (9th Cir. 2007).

> (ii) the expiration of the period in which the
> alien is permitted to seek review of such order
> by the Board of Immigration Appeals.

*Id.* § 1101(a)(47)(B).

A straightforward reading of this text indicates that an order of removal cannot become final for any purpose when it depends on the resolution of further issues by the IJ on remand. The INA's repeated reference to "the" order suggests that Congress contemplated that an alien's removal proceedings would typically culminate in one final order of removal. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1181 (9th Cir. 2013) (interpreting the statutory term "the" to mean "singular"); *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) (observing that the "definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to [the] indefinite or generalizing force 'a' or 'an'" (quoting BLACK'S LAW DICTIONARY 1477 (6th ed. 1990)); *cf. Stone*, 514 U.S. at 393–95 (holding that an amendment to the INA in 1990 abrogated the default presumption that "Congress visualized a single administrative proceeding in which all questions relating to an alien's deportation would be raised and resolved," but that it did so only in the specific context of motions to reopen and reconsider (internal quotation marks omitted)). If there is only one final order of removal—as is true in the absence of a motion to reopen or reconsider—it is difficult to conceive how the order could become final at multiple points in time.

Congress's use of the word "final" strengthens this view. "Final" commonly means "[m]arking the last stage of a process; leaving nothing to be looked for or expected; ultimate." *Final*, OXFORD ENGLISH DICTIONARY,

http://www.oed.com/view/Entry/70319 (last visited Aug. 11, 2014). In the legal context, the term "final" refers to an order "ending a court action or proceeding leaving nothing further to be determined by the court or to be done except the administrative execution of the court's finding . . . ." WEBSTER'S THIRD NEW INT'L DICTIONARY 851 (2002); *see also* BLACK'S LAW DICTIONARY 747 (10th ed. 2014) (defining "final" as "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated; concluded"). Congress's use of this familiar term suggests that it did not intend for an order of removal to become final while remanded proceedings are ongoing.

Although the statutory text provides a strong indication of how we should treat mixed BIA decisions, it "does not speak unambiguously to the issue here." *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2203 (2014). In particular, the dual reference to "the order . . . concluding that the alien is deportable *or* ordering deportation" could suggest that two different kinds of orders are covered; an alien could be deportable but not ordered deported (because he is possibly entitled to some form of relief from deportation). *See* 8 U.S.C. § 1101(a)(47)(A) (emphasis added). The language of the INA thus does not completely foreclose the possibility that a mixed BIA decision could constitute a final order of removal with regard to the claims denied. For further guidance, we turn to the agency's interpretations.

Neither the BIA nor the Executive Office for Immigration Review ("EOIR") has expressly addressed the issue before us. Nonetheless, the agency's regulations, and particularly its interpretations of those regulations, bolster the view that a mixed BIA decision is not "final" with regard to any of the alien's claims. These well-reasoned, if indirect,

interpretations further persuade us that in the absence of a motion to reopen or reconsider, there is only one final order of removal per alien, and that order does not become final until background checks or other remanded proceedings are complete. *Cf. Mejia-Hernandez v. Holder*, 633 F.3d 818, 822 (9th Cir. 2011) (applying *Skidmore* deference to the BIA's interpretation "proportional to its thoroughness, reasoning, consistency, and ability to persuade").[7]

As a general matter, EOIR regulations provide that the BIA "may return a case to . . . an immigration judge for such further action as may be appropriate, *without entering a final decision* on the merits of the case." 8 C.F.R. § 1003.1(d)(7) (emphasis added). Also relevant to the particular circumstances before us is that a comprehensive set of regulations and BIA decisions governs background checks. By regulation, the BIA may not grant certain forms of relief, including withholding of removal, until background checks have been completed. 8 C.F.R. § 1003.1(d)(6)(i). If background checks must be completed or updated, the BIA may remand to the IJ with instructions to carry out the checks. *Id.* § 1003.1(d)(6)(ii)(A). When a case is remanded

---

[7] Although we find the agency's interpretations persuasive under *Skidmore*, we conclude that neither *Chevron* nor *Auer* deference is appropriate. The question presented here is whether the BIA's 2008 decision was a "final order of removal" within the meaning of 8 U.S.C. § 1252, our jurisdictional statute. Just as we refuse to apply *Chevron* deference when an agency purports to directly define our jurisdiction, *see Dandino, Inc. v. U.S. Dep't of Transp.*, 729 F.3d 917, 920 n.1 (9th Cir. 2013) ("It is well-established that the Agency's position on our jurisdiction is not entitled to deference under *Chevron*." (alterations and internal quotation marks omitted)), an agency's implicit interpretation of our jurisdictional statute is not entitled to controlling *Chevron* or *Auer* deference.

to the IJ for background checks, the IJ is required to "consider the results of the identity, law enforcement, or security investigations or examinations," and "[i]f new information is presented, the immigration judge may hold a further hearing if necessary to consider any legal or factual issues, including issues relating to credibility, if relevant." *Id.* § 1003.47(h). "The immigration judge shall then enter an order granting or denying the immigration relief sought." *Id.* Similarly, EOIR's interim rule governing background checks states that when required checks have not been completed, "the Board will not be able to issue a final decision granting any application for relief that is subject to the provisions of § 1003.47, because the record is not yet complete." Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743, 4748 (Jan. 31, 2005).

The BIA has interpreted these regulations in a pair of published, three-member decisions. First, in *In re Alcantara-Perez*, 23 I. & N. Dec. 882 (BIA 2006), the Board considered how an IJ should proceed if background checks reveal that the alien may be ineligible for a form of relief that has already been provisionally granted. The BIA concluded that because an order remanding the case for background checks is "not a final decision," new information that comes to light on remand permits the IJ to "examine the case in a different light," including by holding new hearings. *Id.* at 884. The BIA also explained that where the background checks fail to turn up new evidence, "the Immigration Judge will enter an order granting relief," and "[t]hat order then becomes *the* final administrative order in the case." *Id.* at 885 (emphasis added).

In *In re M-D-*, 24 I. & N. Dec. 138 (BIA 2007), the BIA again considered the scope of the IJ's jurisdiction on remand. The BIA explained that "when a case is remanded to an Immigration Judge for the appropriate background checks pursuant to 8 C.F.R. § 1003.47(h), the Immigration Judge reacquires jurisdiction over the proceedings." *Id.* at 141. On remand, the IJ "may not reconsider the decision of the Board," but "if the background checks reveal new evidence potentially affecting relief, the Immigration Judge must consider such evidence before entering an order." *Id.* Reiterating its position in *Alcantara-Perez*, the BIA remarked that when it remands for background checks, "no final order exists." *Id.*

These agency interpretations shed further light on what the text of the statute already implies: in a case like Abdisalan's, there is only one final order of removal, and when the BIA remands to the IJ, that order is not "final" until administrative proceedings have concluded. Indeed, under the BIA's own precedential decisions, the BIA lacked authority to issue "the final administrative order in [Abdisalan's] case" because it remanded the matter to the IJ for background checks. *In re Alcantara-Perez*, 23 I. & N. Dec. at 885. In such circumstances, the BIA has made clear that "no final order exists." *In re M-D-*, 24 I. & N. Dec. at 141.

In a related context, the Supreme Court has long interpreted the term "final agency action" in the Administrative Procedure Act to require that an agency's action "mark the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). In other

words, the action "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178; *see also Sackett v. EPA*, 132 S. Ct. 1367, 1372 (2012) (holding that an agency order was final in part because its conclusions "were not subject to further agency review"). In the immigration context, the agency's adjudication of an alien's claims can hardly be considered fully consummated while background checks or other remanded proceedings which have the potential to affect the disposition are still in progress.

Finally, we note that considerations of judicial efficiency also weigh in favor of reviewing a single final order of removal. *See, e.g.*, *Nat'l Steel & Shipbuilding Co. v. Dir., Office of Workers' Comp. Programs*, 626 F.2d 106, 107–08 (9th Cir. 1980) (holding that an agency order involving a remand is not a reviewable "final order," and reasoning that this rule "furthers the same policies as the finality rule embodied in 28 U.S.C. § 1291"); *Dir., Office of Workers' Comp. Programs v. Brodka*, 643 F.2d 159, 161 (3d Cir. 1981) (noting that declining to exercise jurisdiction over agency remand orders "furthers the interests of administrative economy and judicial efficiency embodied in the policy against piecemeal appeals"). Nor is this rule likely to have an unfair impact on petitioners. *See INS v. Doherty*, 502 U.S. 314, 323 (1992) ("[A]s a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.").

## C.

When the BIA remands to the IJ for any reason, no final order of removal exists until all administrative proceedings have concluded. Thus, when the BIA issues a mixed decision, no aspect of the BIA's decision is "final" for the

purpose of judicial review. By adopting this rule, we overrule *Li* as well as *Annachamy v. Holder*, 733 F.3d 254 (9th Cir. 2013), to the extent that it relies on *Li*'s finality holding.[8]

Today's holding renders premature any pending petitions for review that were filed in this court while background checks or other remanded proceedings were ongoing. Here, for instance, Abdisalan's petition for review of the 2010 BIA decision was filed before the conclusion of her agency proceedings in 2011, and was thus premature at the time it was filed. Abdisalan also filed a timely petition for review of the 2011 IJ order, but there are surely other petitioners who were not so prescient. In particular, there may be petitioners who filed petitions for review that we now know to be premature, but who assumed—in reasonable reliance on *Li*—that they did not need to file a second petition after their remanded proceedings were completed. It would be unjust to punish these petitioners for our own doctrinal inconsistency.

Therefore, we hold that any pending petitions rendered premature by today's decision shall be treated as automatically ripening into timely petitions upon the completion of remanded proceedings, regardless of whether those proceedings have already concluded. Under this rule, Abdisalan's premature 2010 petition ripened upon the conclusion of her administrative proceedings in 2011, which means we have jurisdiction over both of her petitions. We take no position on the current circuit split regarding

---

[8] Under the facts of this case, we need not revisit our rule that the BIA's decision is a final order of removal when it remands for consideration of voluntary departure but denies all other forms of relief. *See, e.g.*, *Pinto v. Holder*, 648 F.3d 976, 980 (9th Cir. 2011); *Castrejon-Garcia v. INS*, 60 F.3d 1359, 1361–62 (9th Cir. 1995).

treatment of premature petitions generally.**⁹**   Our holding extends only to petitioners whose petitions for review were filed in this court before today's date.

Finally, we note that if the BIA wishes to avoid formally remanding cases to the IJ, it may avail itself of its regulatory authority to stay proceedings and refrain from issuing a decision until background checks have been completed or updated.   *See* 8 C.F.R. § 1003.1(d)(6)(ii)(B); *id.* § 1003.1(d)(6)(iii). Adopting such an approach might prevent further confusion in the courts of appeals that have yet to decide this issue.

## IV.

We therefore have jurisdiction over Abdisalan's consolidated petition for review, which challenges the agency's finding that her asylum claim was time-barred.

The Government concedes that because the IJ granted Abdisalan withholding of removal on the basis of past persecution, Abdisalan has necessarily met the lesser standard for a grant of asylum.  Regardless of the merits of her asylum claim, however, she must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of [her] arrival in the United States."

---

**⁹** *Compare Khan v. Att'y Gen. of the U.S.*, 691 F.3d 488, 493 (3d Cir. 2012) (holding that a premature petition for review automatically ripens once the order of removal becomes final so long as the Government was not prejudiced by the premature filing), *and Herrera-Molina v. Holder*, 597 F.3d 128, 132 (2d Cir. 2010) (same), *with Moreira v. Mukasey*, 509 F.3d 709, 713 (5th Cir. 2007) (holding that a premature petition does not ripen when the order of removal becomes final), *and Jaber v. Gonzales*, 486 F.3d 223, 228–30 (6th Cir. 2007) (same).

8 U.S.C. § 1158(a)(2)(B). Although we typically lack jurisdiction to review whether the applicant's evidence was "clear and convincing," we may review the agency's interpretation of this legal standard. *See id.* § 1252(a)(2)(D) (stating that we retain jurisdiction over "constitutional claims or questions of law").

Abdisalan testified that she arrived in the United States in February 2002. She explained that after entering via Mexico and staying in San Diego for a few days, she took a Greyhound bus to Seattle, where she now lives. Abdisalan's relative Halimo Mohamed Nur testified that she saw Abdisalan in the United States for the first time in February 2002. Although she could not recall the exact date, she testified that "I believe it was [February] 20 something." No person or document placed her timely filing in dispute. Even if there was some discrepancy in the record as to whether Abdisalan arrived in February or March of 2002, her application would have been timely either way.

Despite this testimony, the IJ found that Abdisalan failed to demonstrate by clear and convincing evidence that her application was timely, reasoning that she had neither documentary evidence nor convincing witness testimony to corroborate her claim that she arrived in the United States within one year of filing her asylum application. The BIA affirmed for the same reasons.

In *Singh v. Holder*, 649 F.3d 1161, 1164–65 (9th Cir. 2011) (en banc), decided after Abdisalan filed her petitions for review, we held that the REAL ID Act does not require an asylum applicant to "corroborate credible testimony that he complied with the one-year filing deadline," *id.* at 1165. In other words, the REAL ID Act did nothing to affect our long-

standing rule that testimony regarding timely filing need not be corroborated to be deemed "clear and convincing." We declined to consider, however, "whether Singh simply failed to meet the standard here," given that "testimony may be credible without rising to the level of clear and convincing evidence." *Id.* at 1168–69. We further noted that "the BIA has provided neither definition nor structure to the contours of [the "clear and convincing"] standard with respect to the one-year filing bar," *id.* at 1168, and remanded to the BIA so that it could elaborate on that standard, *see id.* at 1169. The Government has informed us that no such elaboration occurred, as Singh's case was administratively closed, so no precedential decision is forthcoming.

Abdisalan's petition once again raises the question remanded in *Singh*—the standards for determining whether, in light of our en banc opinion in *Singh*, a pre–REAL ID Act asylum applicant's credible and uncontradicted testimony regarding her date of entry meets the statutory "clear and convincing evidence" standard. We therefore remand to the BIA so that it may address that question in the first instance.

**GRANTED AND REMANDED.**